UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
PATRICIA VESELY,

                          Plaintiff,

                                                              20-cv-2725 (PKC)
          -against-
                                                              OPINION AND ORDER


LONG ISLAND RAILROAD COMPANY,

                          Defendant.
---------------------------------------------------------x
CASTEL, U.S.D.J.

          A jury of eight was empaneled to hear plaintiff Patricia Vesely's negligence claim

against defendant Long Island Railroad Company ("LIRR").  The trial centered upon LIRR's

alleged negligence in its maintenance of the LIRR Hunterspoint Avenue Station platform in

Queens, New York—specifically, upon LIRR's placement of a metal bridgeplate between a trash

can and the underside of an ascending staircase, over which Vesely tripped and fell during her

morning commute, injuring her left wrist and shoulder.[1]  On December 8, 2021, following a

three-day trial, the jury returned a verdict in favor of Vesely, finding that: (1) LIRR had been

negligent; (2) LIRR's negligence caused Vesely's injury; (3) the amount of damages sustained

from her injury was $200,000—$90,000 for past pain and suffering and $110,000 for future pain

and suffering (approximately $4,761.90 per year for her 23.1 years of life expectancy)—and (4)

Vesely was also negligent, partially caused her injury and was 77% at fault in causing the

accident at issue.  The Court then entered a judgment in favor of Vesely in the sum of $46,000 as

against LIRR.  (Doc 42 (Judgment).)  Vesely now moves for a new trial solely on the issue of

_____

[1] A bridgeplate, as explained to the jury, is a steel plate used to bring people in wheelchairs on and off of trains by
bridging the gap between the train and the station platform.  (Tr. at 24.)

damages pursuant to Rule 59(a), Fed. R. Civ. P.  (Doc 54.)  For reasons to be explained, Vesely's motion will be denied.

APPLICABLE STANDARD

In considering a Rule 59 motion in a case where the court exercises diversity jurisdiction, the court applies the governing state law with respect to questions of substantive law, including questions regarding the appropriateness of a damages award.  See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 420-21 (1996).  Where damages are awarded on claims governed by New York law, a federal court will apply the standard of review provided by New York's CPLR § 5501(c), id. at 430-31, which provides that "[i]n reviewing a money judgment in an action . . . [the court] shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation."  CPLR § 5501(c).

This standard requires a "more exacting review than the 'shocks the conscience' standard generally applied by federal courts."  Patterson v. Balsamico, 440 F.3d 104, 119 (2d Cir. 2006).  "A district court applying [the CPLR § 5501(c)] standard 'reviews the evidence presented at trial in support of the challenged damage award and compares the award to other New York cases in which evidence of similar injuries was presented.'"  Rangolan v. Cnty. of Nassau, 370 F.3d 239, 244 (2d Cir. 2004) (quoting Presley v. United States Postal Service, 317 F.3d 167, 173 (2d Cir. 2003)).

In so reviewing, although earlier court awards are instructive, they are not binding on the reviewing court.  Lewis v. City of New York, 689 F. Supp. 2d 417, 430 (S.D.N.Y. 2010).  See also Senko v. Fonda, 53 A.D. 2d 638, 639 (2d Dep't 1976) ("This is not to say that the amount of damages awarded or sustained in cases involving similar injuries are in any way binding upon the courts in the exercise of their discretion.").  Furthermore, when reviewing the

- 2 -

amount of damages under CPLR § 5501, a court recognizes that "the amount of damages to be awarded for personal injuries is a question for the jury, and the jury's determination is entitled to great deference." Olive v. New York City Transit Auth., 197 A.D.3d 567, 569 (2d Dep't 2021) (citation and quotation marks omitted).

After applying the CPLR § 5501(c) standards on a Rule 59 motion, if a district court determines that the jury award deviates materially from what it considers to be reasonable compensation, it may order a new trial. Gasperini, 518 U.S. at 433. In ordering a new trial for a jury award determined to be excessive, the court may "order[] a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." Id. (quoting Dimick v. Schiedt, 293 U.S. 474, 486-87 (1935)). In ordering a new trial for a jury award determined to be inadequate, however, a district court may not use "[a]dditur . . . a practice by which a judge offers a defendant the choice between facing a retrial and accepting a damage award higher than that determined by the jury." Liriano v. Hobart Corp., 170 F.3d 264, 272 (2d Cir. 1999).

This is because the Supreme Court, while having recognized that the practice of "remittitur withstands Seventh Amendment attack . . . [has] reject[ed] additur as unconstitutional," Gasperini, 518 U.S. at 433 (citing Dimick, 293 U.S. at 486-87), even though the "freedom to use additur . . . is enjoyed by many state court judges."[2] Liriano, 170 F.3d at 272. In other words, should the Court find here that the jury award materially deviated from

---

[2] As noted by the Supreme Court itself, in Dimick, Justice Stone, joined by Chief Justice Hughes, and Justices Brandeis and Cardozo, "[i]nvit[ed] rethinking of the additur question on a later day . . . [having found nothing in the history or language of the Seventh Amendment forcing the 'incongruous position' that 'a federal trial court may deny a motion for a new trial where the plaintiff consents to decrease the judgment to a proper amount,' but may not condition denial of the motion on 'the defendant's consent to a comparable increase in the recovery.'" Gasperini, 518 U.S. at 433 n.13 (quoting Dimick, 293 U.S. at 495). But as far as this Court can tell, additur remains a "forbidden practice" in federal court. Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 165 n.26 (2d Cir. 2014) (citing Dimick, 293 U.S. at 474.).

reasonable compensation for Vesely's injuries, the Court would grant the motion for a new trial without conditioning a new trial upon LIRR's acceptance of a higher damages award.  This is so even though CPLR § 5501(c), whose "materially deviates" standard the Court applies here, explicitly provides for both remittitur and additur in state court proceedings.  See, e.g., Fox v. City Univ. of New York, No. 94 Civ. 4398(CSH), 1999 WL 33875, at * 11 (S.D.N.Y. Jan. 26, 1999) ("It follows that, even in a diversity case presenting only state law claims, a federal trial judge cannot make an order of additur, even though his state court colleague could.  The reality is that, unless and until the Supreme Court overrules Dimick v. Schiedt, a state statute such as § 5501(c) cannot trump the United States Constitution.").

EVIDENCE AT TRIAL

At trial, two witnesses testified regarding Vesely's injuries: Vesely herself and Dr. Brett Lenart, an orthopedist and expert witness engaged by Vesely who was Vesely's primary treating physician for her injuries sustained from her fall.  (Tr. 105-07.)  The jury was also shown a surveillance video of Vesely being taken away from the station platform by medical personnel (Tr. 50) and three photos of Vesely in an ambulance, depicting scratches and cuts to her head and face, a cut to one of her fingers on her right hand, her left wrist in a splint and her left shoulder in a sling.  (Tr. 50-52.)  From the evidence presented at trial, Vesely's injuries can be principally described as follows.

The first of her primary injuries was a broken wrist, which required an initial realignment on the day of the accident and surgery a few days after the accident, resulting in the insertion of a metal plate and metal screws into her arm and scars on the side of her wrist.  (Tr. 57.)  Vesely was also required to attend twelve to fifteen physical therapy sessions after her wrist surgery.  (Tr. 57-58.)  The injury resulted in the permanent loss of approximately a third of the

wrist's range of motion.  (Tr. 114-16.)  The injured wrist currently gives Vesely "not so much

pain, more achy, but a lot of pins and needles"—symptoms associated with carpal tunnel

syndrome, for which she has received two cortisone shots with more scheduled at the time of

trial.  (Tr. 58.)  As to the initial realignment of the fractured wrist that Vesely received on the day

of the accident, Dr. Lenart testified that the process "can be" a painful procedure.  (Tr. 107.)

Evidence presented at trial did not discuss whether the wrist injury permanently impaired her

ability to hold objects in her hand, but Vesely testified that she was "[r]ight-handed," meaning

that her injuries were to her non-dominant arm.  (Tr. 62.)

    Vesely's second primary injury was a broken shoulder, which first required a

splint for six weeks and physical therapy for approximately ten months.  (Tr. 61-64.)  The injury

eventually required a "reverse shoulder replacement surgery," entailing the replacement of her

shoulder with a titanium joint and an overnight stay.  (Tr. 65.)  Dr. Lenart, called to testify by

Vesely, stated that "I always tell my patients, a reverse shoulder replacement will always give

you a good shoulder.  It's never going to give you a great shoulder . . . it's not going to give you

normal range of motion when the full healing is done."  (Tr. 128.)  At the time of trial, Vesely

testified that the left shoulder had shown "slight improvement" after surgery, but still felt painful

"[n]ot every day but every couple of days," or if slept on, for which Vesely took pain

medications "only as needed."  (Tr. 66.)  Dr. Lenart testified that the shoulder injury ultimately

resulted in the permanent loss of approximately half the joint's range of motion after surgery.

(Tr. 67, 130-31.)  As to the impact of her shoulder injury, Vesely testified that she cannot get

anything out of the top of the fridge or the cabinets, and that "putting certain clothing on

becomes very difficult."  (Tr. 67.)  She also testified that she could not "play with [her

grandchildren] completely," and that she "was hoping to lose weight," and go hiking with her

sister, which she could not due to her injuries.  (Tr. 67-68.)  On cross-examination, however,

Vesely stated that, as to the issue of weight, she had had bariatric surgery in 2010 and agreed

with defense counsel's statement that she "had actually been considering that and dealing with

[losing weight] for more than ten or [fifteen] years," prior to the accident at issue.  (Tr. 73.)

   Finally, as a general matter: (i) her injuries, which also included non-permanent

cuts to her head and one finger on her right hand, were caused by a slip-and-fall accident and

caused her "severe pain" immediately afterwards (Tr. 42); (ii) her injuries did not require an

overnight stay at the hospital where staff first diagnosed and treated her injuries (Tr. 52); and (iii)

the jury was instructed that Vesely was 60 years old, and that according to non-conclusive

statistical averages, she had a remaining life expectancy of 23.1 years, although this neither

guaranteed that she would live an additional 23.1 years nor that she would not live for a shorter

or longer period.  (Tr. 195.)

DISCUSSION

   As noted, a district court applying the CPLR § 5501(c) standard "reviews the

evidence presented at trial in support of the challenged damage award and compares the award to

other New York cases in which evidence of similar injuries was presented."  Rangolan, 370 F.3d

at 244 (quotation marks and citation omitted).  A district court will then determine whether the

jury's award is excessive or inadequate if it deviates materially from what would be reasonable

compensation, based on similar New York cases.  CPLR § 5501(c).

   But as also noted, earlier awards are instructive rather than binding—in particular,

"courts have recognized that 'awards for pain and suffering . . . do not lend themselves as easily

to computation' as quantifiable economic awards, such as compensation for past medical bills."

Nivar v. Sandler, 1:13-cv-7141-GHW, 2016 WL 3647957, at *3 (S.D.N.Y. July 1, 2016)

(quoting <u>Okraynets v. Metro. Transp. Auth</u>, 555 F. Supp. 2d 420, 435 (S.D.N.Y. 2008)).[3]  Here,

while the Court must engage in the section 5501(c) analysis and compare the jury's award here

to similar New York cases, it also recognizes the principle that "great deference is given to the

interpretation of evidence by a jury" for a CPLR § 5501 analysis.  <u>Okraynets</u>, 555 F. Supp. 2d at

436 (citing <u>Abar v. Freightliner Corp.</u>, 208 A.D.2d 999, 1001 (3d Dep't 1994)).  Courts will not

disturb the jury's interpretation of the evidence "unless the evidence so preponderates in favor of

the moving party that the verdict could not have been reached on any fair interpretation of the

evidence."  <u>Albanese v. Przybylowicz</u>, 116 A.D. 3d 1216, 1217 (3d Dep't 2014) (quoting

<u>Olmsted v. Pizza Hut of Am., Inc.</u>, 81 A.D.3d 1223, 1224 (3d Dep't 2011)).

        The parties have been unable to point to, and the Court has not located awards for

substantially similar injuries, specifically, injuries (1) to a 60-year-old woman with around 23.1

years of life expectancy (2) for both a fractured wrist and fractured shoulder (3) in her non-

dominant arm, which (4) required surgery and (5) resulted in some permanent loss in the range

of motion as well a feeling of pins and needles in the injured wrist and occasional pain in the

injured shoulder.  In addition to these highly relevant factors, the Court must also account for

relevant trial evidence considered by the jury, such as the fact that Vesely's own attending

physician and trial witness testified that the operation she underwent would "always give you a

good shoulder," but not "a great shoulder," (Tr. 128), or the fact that Vesely testified that her left

wrist feels "not so much pain, more achy" (Tr. 58).  The Court, however, has identified a case

dealing solely with a similar wrist injury and a case dealing solely with a similar shoulder injury,

---

[3] <u>See</u> <u>also</u> <u>Okraynets</u>, F. Supp. 2d at 435 ("'CPLR 5501(c) forces the court into the awkward position of attempting to . . . (implicitly) rank the affliction of one tort victim against that of another. . . . To measure the impact of a tragedy in the life of one person <i>vis-à-vis</i> another is beyond judicial (and perhaps human) capacity." (alterations in original) (quoting <u>In re Joint Eastern and Southern Dist. Asbestos Litig.</u>, 9 F. Supp. 2d 307, 311 (S.D.N.Y. 1998)).

which, when combined, provide helpful insight as to what may constitute reasonable

compensation under New York law for both Vesely's wrist injury and her shoulder injury.

      A.    <u>Vesely's Wrist Injury</u>

      Vesely's wrist injury has some similarities to the injuries in <u>Conley v. City of</u>

<u>New York</u>, 40 A.D.3d 1024 (2d Dep't 2007), in which a pedestrian was initially awarded

$14,000 for past pain and suffering and $0 for future pain and suffering related to a slip-and-fall

accident on a raised and broken city sidewalk, resulting in a fracture to her right wrist that

required surgery and physical therapy and led to permanent loss in the range of motion for her

wrist, permanent traumatic arthritis, and difficulty carrying things. On review, the appellate

court held that the jury's verdict was inadequate and that an increased award of $125,000 for past

pain and suffering and $75,000 for future pain and suffering would be reasonable compensation.

<u>Id.</u> at 1025. It also appears based on Conley's appellate brief that the "[p]laintiff was a 74 year

old grandmother," and that she injured her dominant wrist. <u>Conley v. City of New York</u>, No.

2005-11039, 2006 WL 4844796, at *4-5 (2d Dep't Oct. 16, 2006) (Brief for Plaintiff-Appellant).

      In comparing <u>Conley</u> and the present case, Vesely's wrist injury, while similar in

that it was also caused by a slip-and-fall accident, and also resulted in surgery, physical therapy,

and some permanent loss in the range of motion in the wrist, differs in several and significant

ways from Conley's wrist injury. Specifically, Vesely did not injure her dominant wrist, her

wrist injury did not cause permanent traumatic arthritis, and she does not appear to have trouble

carrying objects or experience pain in the wrist, other than sensations of pins and needles

associated with carpal tunnel syndrome.

      Considering both the similarities and disparities between Conley and Vesely's

wrist injuries, as well giving deference to the jury's credibility determinations and the strength of

the evidence at trial, the Court concludes that a reasonable compensation for Vesely's wrist injury would be much lower than the inflation-adjusted awards for Conley as to both Conley's past pain and suffering and Conley's future pain and suffering, which come out to roughly $178,094.15 and $106,856.49 in July 2022 dollars, respectively.[4]  In other words, as to Vesely's wrist injury, the Court concludes that a reasonable compensation for her past pain and suffering would be much lower than $178,094.15 in July 2022 dollars, and that a reasonable compensation for her future pain and suffering would be much lower than $11,742.47 in July 2022 dollars per year.

B.      Vesely's Shoulder Injury

As to Vesely's shoulder injury, in another slip-and-fall case, Lamb v. Babies 'R' Us, Inc., 302 A.D.2d 368 (2d Dep't 2003), a 76-year-old plaintiff was initially awarded $7,600 for past pain and suffering and $12,615 for future pain and suffering for a fractured left shoulder—a "comminuted fracture" into multiple pieces of bone—resulting in "excruciating pain," physical therapy and permanent restrictions on the use of her left arm due to a lack of strength and limitation of motion in her shoulder.[5]  Id. at 369.  It also appears from the defendants-respondents' brief that Lamb's injury was to her non-dominant arm, meaning that she was right-handed.  Lamb v. Babies 'R' Us, Inc., No. 2002-02331, 2002 WL 32377837, at *5 (2d Dep't Jan. 10, 2003) (Brief of Defendants-Respondents).

---

[4] According to the U.S. Bureau of Labor Statistics' Consumer Price Index Inflation Calculator at https://www.bls.gov/data/inflation_calculator.htm (last visited September 1, 2022), the $125,000 of May 2007 dollars awarded for Conley's past pain and suffering is the equivalent of approximately $178,094.15 in July 2022 dollars, the latest month for which such data is available.  Similarly, the $75,000 of May 2007 dollars awarded for Conley's future pain and suffering is the equivalent of approximately $106,856.49 in July 2022 dollars.  When considering that Conley was 14 years older than Vesely, applying Vesely's life expectancy of roughly 23.1 years, Conley's award for future pain and suffering should be divided by 9.1 years, resulting in approximately $11,742.47 in July 2022 dollars per year for future pain and suffering.
[5] Lamb was 74 years at the time of the slip and fall, but more than two years had passed since her accident and her September 2001 trial.

While Lamb did not have surgery on her fractured shoulder, there was testimony explaining that the decision to forego surgery was due to serious medical complications, as opposed to the non-seriousness of the shoulder injury—specifically, Dr. Parker, an orthopedic surgeon who examined Lamb testified that "a hemiarthroplasty, replacing half of the joint . . . the half being the humerus, the shoulder . . . that's a very difficult procedure to do for a patient who's 76 years old" who had heart disease.  Lamb v. Babies 'R' Us, Inc., No. 2002-02331, 2002 WL 32377838, at *8 (2d Dep't Jan. 10, 2003) (Brief of Plaintiff-Appellant).  There was further testimony that the two orthopedic surgeons who saw Lamb, including Dr. Parker, "recommended that it was not in her best interests to go forward with surgery." Id.  As to the severity of Lamb's injury, Dr. Parker testified that her injury was "so bad" that he could not "imagine that [it was] going to get better in any way," that "[i]t certainly will not get better," and that she had "virtually no motion of the shoulder now." Id.  On review, the appellate court held that the jury's verdict was inadequate and that instead, an increased award of $25,000 for past pain and suffering and $40,000 for future pain and suffering would be reasonable compensation.  Lamb, 302 A.D.2d at 356-57.

Vesely's shoulder, like Lamb's, experienced a comminuted fracture into multiple pieces after a slip-and-fall accident.  But unlike Lamb's shattered shoulder, Vesely's injury was operable and Vesely herself noted that there was slight improvement in her shoulder after the operation.  Unlike Lamb's shoulder, which was described as having "virtually no motion," Vesely's left shoulder lost half her range of motion.  Unlike Lamb's shoulder which "suffered from a lack of strength" and was not predicted to improve, there was no evidence at trial indicated that Vesely's shoulder lacked strength—only that her range of motion was limited. Indeed, Vesely's own witness and attending physician testified that "I always tell my patients, *a*

*reverse shoulder replacement will always give you a good shoulder.*  It's never going to give you a great shoulder."  (Tr. 128 (emphasis added).)

Considering both the similarities and disparities between Lamb and Vesely's shoulder injuries, as well as giving deference to the jury's credibility determinations and the strength of the evidence at trial, the Court concludes that a reasonable compensation for Vesely's shoulder injury would be much lower than the inflation-adjusted awards for Lamb as to both Lamb's past pain and suffering and future pain and suffering, which come out to roughly $40,452.76 and $64,724.41 in July 2022 dollars, respectively.[6]  In other words, as to Vesely's shoulder injury, the Court concludes that a reasonable compensation for her past pain and suffering would be much lower than $40,452.76 in July 2022 dollars, and that a reasonable compensation for her future pain and suffering would be much lower than $9,116.11 in July 2022 dollars per year.

C.    Reasonable Compensation for Vesely's Wrist and Shoulder Injuries

As noted, in Conley, as to Conley's injured wrist, the damages award for her past pain and suffering equates to approximately $178,094.15 in July 2022 dollars and the damages award for her future pain and suffering equates to approximately $11,742.47 in July 2022 dollars per year.  In Lamb, as to Lamb's injured shoulder, the damages award for her past pain and suffering equates to approximately $40,452.76 in July 2022 dollars and the damages award for her future pain and suffering equates to approximately $9,116.11 in July 2022 dollars per year.

---

[6] According to the U.S. Bureau of Labor Statistics' Consumer Price Index Inflation Calculator at https://www.bls.gov/data/inflation_calculator.htm (last visited September 1, 2022), the $25,000 of February 2003 dollars awarded for Lambs's past pain and suffering is the equivalent of approximately $40,452.76 in July 2022 dollars, the latest month for which such data is available.  Similarly, the $40,000 of February 2003 dollars awarded for Lamb's future pain and suffering is the equivalent of approximately $64,724.41 in July 2022 dollars.  When considering that Lamb at trial was 16 years older than Vesely, applying Vesely's life expectancy of roughly 23.1 years, Conley's award for future pain and suffering should be divided by 7.1 years, resulting in approximately $9,116.11 in July 2022 dollars per year for future pain and suffering.

- 11 -

Combining the awards for <u>Conley</u> and <u>Lamb</u> results in a damages award for past pain and suffering of approximately $218,546.91 in July 2022 dollars and a damages award for future pain and suffering of approximately $20,858.58 in July 2022 dollars per year.  For the reasons discussed, the Court therefore also concludes that a reasonable compensation for Vesely's past pain and suffering would be much lower than $218,546.91 in July 2022 dollars and a reasonable compensation for Vesely's future pain and suffering would be substantially lower than $20,858.58 in July 2022 dollars per year.

The remaining question then, is whether Vesely's current damages award— $90,000 for her past pain and suffering and approximately $4,761.90 per year of life expectancy (totaling $110,000) for her future pain and suffering—materially deviates from what would be reasonable compensation.  For reasons explained below, the Court concludes that it does not.

There are factual similarities (primarily a broken wrist and a broken shoulder causing pain and some level of permanent impairment moving forward) that make <u>Conley</u> and <u>Lamb</u> instructive guideposts for the present CPLR § 5501 inquiry.  But there are also several and significant disparities between the injuries from these cases and Vesely's injury, which the Court must carefully account for.  Specifically, there were several aggravating factors as to both past and future pain and suffering in <u>Conley</u> (such as permanent injury to the *dominant* arm, permanent traumatic arthritis, and permanent issues with grip strength) and <u>Lamb</u> (such as an almost complete loss in the range of motion and permanent lack of strength in the shoulder joint) that are absent in the present case.  Conversely, there are mitigating factors in the present case (such as Vesely's testimony regarding the lack of pain in her left wrist following surgery and Dr. Lenart's testimony that Vesely's shoulder replacement surgery would always result in a "good shoulder," albeit not a "great shoulder"), which are absent in the referenced cases.

Finally, the Court highlights that there was evidence at trial that undermined Vesely's credibility generally before the jury, such as her attempt to frame her injuries as foreclosing her efforts to begin hiking and losing weight in the near future, which were shortly cast into doubt upon cross-examination, when she testified that she had actually been unsuccessfully attempting to lose weight for more than "ten or 15 years."  (Tr. 73.)  Furthermore, while Vesely only seeks a new trial on the issue of damages, the Court notes that the jury at the December 2021 trial was charged with carefully examining the entire body of evidence presented at trial to also decide the issues of liability and comparative negligence.  Despite Vesely's arguments to the contrary, they found Vesely 77% at fault for causing her injuries, having heard Vesely initially testify under oath that she did *not* "walk[] between the trashcan and the vertical column" next to the ascending staircase (Tr. 76), only to eventually admit—at the very next question upon cross-examination—that in a prior deposition, she testified that she "walked between the garbage can and the column before the accident."  (Tr. 78-79.)  Vesely's claim of pain and suffering was largely based upon her own subjective report and the jury would have been justified in assessing her credibility as low.

Accordingly, after comparing damages awards in similar New York cases,[7] which are instructive but not binding, Lewis, 689 F. Supp. 2d at 430, and giving "great deference" to the jury's findings of fact and credibility determination, Olive, 197 A.D.3d at 569, which "courts will not disturb . . . unless the evidence so preponderates in favor of the moving party that the

---

[7] The cases cited by Vesely are inapposite, as they involved additional non-wrist or non-shoulder injuries, presented aggravating factors absent in the present case, concerned a different legal claim (such as 42 U.S.C. § 1983 claim) or *sustained* the jury's damages award as opposed to setting it aside.  For example, in discussing Alfonso v. Metropolitan Transit Authority, 103 A.D.3d 563 (1st Dep't 2013), Vesely's brief neglects to mention that the plaintiff was injured after being "struck by a truck" and also injured her neck and shoulder, including a "cervical herniated disc."  Id. at 564.  In any case, there is no exact amount for what constitutes "reasonable compensation" under CPLR § 5501(c), which is better described as a range of compensation with both a floor and a "upper limit."  See Okraynets, 555 F. Supp. 2d at 436 (quoting Asbestos Litig., 9 F. Supp. 2d at 312).

verdict could not have been reached on any fair interpretation of the evidence," <u>Albanese</u>, 116 A.D.3d at 1217, the Court concludes that the jury's award of damages for Vesely's past pain and suffering and future pain and suffering does not materially deviate from what would be reasonable compensation for her injuries.  Vesely's motion for a new trial will be denied.

CONCLUSION

       The Court has considered all the arguments of the parties, including those not expressly referenced.  Vesely's motion for a new trial solely on the issue of damages is DENIED.  The Clerk is respectfully directed to terminate the motion (Doc 54).

       SO ORDERED.

                      P. Kevin Castel
                  United States District Judge

Dated:  New York, New York
       September 1, 2022